# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| OREGON HEALTH & SCIENCE UNIVERSITY, | ) |
| *Plaintiff*, | ) |
| v. | ) Civil Action No.: 1:24-cv-02184-RC |
| CAROLE JOHNSON, in her official capacity as Administrator, Health Resources and Services Administration, | ) |
| and | ) |
| XAVIER BECERRA, in his official capacity as Secretary, United States Department of Health and Human Services, | ) |
| *Defendants*. | ) |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff Oregon Health & Science University (OHSU), by and through its attorneys, Hall, Render, Killian, Heath & Lyman, P.C., moves for a temporary restraining order under Federal Rule of Civil Procedure 65(b) against Carole Johnson, in her official capacity as Administrator, Health Resources and Services Administration, and Xavier Becerra, in his official capacity as Secretary, United States Department of Health and Human Services, because OHSU will suffer calamitous and irreparable harm should the Court not grant a restraining order, whereas the government would be no worse off should the Court grant this relief yet the government ultimately prevail in this action.

TABLE OF CONTENTS

Introduction ................................................................................................................................... 1

Background ................................................................................................................................... 2

Argument ....................................................................................................................................... 5

    I.    OHSU has shown that all four factors for a temporary restraining order favor enjoining HRSA ................................................................................................................................ 5

        A.  Legal standard for a temporary restraining order ........................................................ 5

        B.  OHSU is likely to succeed on the merits ..................................................................... 5

            1.    The audit guidelines are legally binding ................................................................ 6

            2.    OHSU is likely to succeed on the merits because HRSA failed to follow the Manufacturer Audit Guidelines, prejudicing OHSU ........................................................... 7

        C.  OHSU is likely to suffer irreparable harm in the absence of temporary injunctive relief 8

        D.  The balance of equities supports a temporary restraining order ................................... 9

        E.  A temporary restraining order supports the public interest ........................................ 10

Conclusion ...................................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101 (D.D.C. 2022) ...........................11
*Christensen v. Harris Cty.*, 529 U.S. 576 (2000) ................................................................................. 6
*Cont'l Res., Inc. v. Gould*, 410 F. Supp. 3d 30 (D.D.C. 2019) ..................................................... 6, 8
*Costa v. Bazron*, 456 F. Supp. 3d 126 (D.D.C. 2020) ......................................................................... 5
*Elevance Health, Inc. v. Becerra*, — F. Supp. 3d. —, 2024 WL 2880415 (D.D.C. 2024) ............ 6
*Genesis Health Care, Inc. v. Becerra*, 701 F. Supp. 3d 312 (D.S.C. 2023) .................................... 8
*Hall v. Johnson*, 599 F. Supp. 2d 1 (D.D.C. 2009) ............................................................................. 5
*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ..................................... 12
*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) ......... 7
*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*, 298 F. Supp. 2d 27 (D.D.C. 2002) ............. 9
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29 (1983) .............................. 6
*Pursuing America's Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) .........................................11
*Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022) ....................................................................... 5, 9, 10
*United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ................................................. 6
*Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1 (D.D.C. 2020) ..................................... 10
*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .......................................................... 5

**Statutes**

42 U.S.C. § 1396r-8 .................................................................................................................................. 2
42 U.S.C. § 256b .............................................................................................................................2, 4, 11
44 U.S.C. § 1507 ....................................................................................................................................... 7
5 U.S.C. § 706 ........................................................................................................................................... 6

**Regulations**

59 Fed. Reg. 30,021 (June 10, 1994) ...................................................................................................... 7
61 Fed. Reg. 65,406 (Dec. 12, 1996) ...................................................................................................... 7

## Introduction

Through its Complaint (ECF No. 1), Plaintiff Oregon Health & Science University (OHSU) has challenged the legality of the final agency decision by the Health Resources & Services Administration (HRSA) to authorize Johnson & Johnson (J&J), a manufacturer that participates in the drug pricing program authorized under Section 340B of the Public Health Service Act (the "340B Program"), to audit OHSU's confidential business records. *Id.* at ¶ 1. By filing this action instead of cooperating with what OHSU believes is an improperly instituted audit, OHSU was and is concerned that HRSA would terminate its status as a 340B Program participating "covered entity" while this action is pending. This concern was validated on November 12, when HRSA notified OHSU in writing that unless OHSU establishes an audit start date by November 26, HRSA reserved the right to terminate OHSU from the 340B Program. Such a result would be devastating for OHSU and would cause irreparable harm, not only for itself, but for the hundreds of thousands of patients that it serves.

Therefore, OHSU moves the Court for immediate entry of a temporary restraining order under Federal Rule of Civil Procedure 65(b) to maintain the status quo—that is, to prevent HRSA from terminating OHSU as a covered entity under the 340B Program—for as long as the Court deems just and proper, but in no event less than fourteen days following the date of the Court's order, and further requests that this Court schedule a hearing on this Motion as soon as practicable.

Pursuant to Local Civil Rule 7(m), on November 18, 2024, the undersigned counsel notified counsel for the Defendants of OHSU's intent to file a motion for a temporary restraining order. On November 20, 2024, Defendants indicated that they oppose OHSU's Motion. To comply with Local Civil Rule 65.1(a), the undersigned counsel filed a copy of this motion through ECF, which will provide notification to all counsel of record for the Defendants.

**Background**

OHSU is an Oregon statutory public corporation with a principal place of business in Portland, Oregon. ECF No. 1, ¶ 29. OHSU operates Oregon Health & Science University Hospital (OHSU Hospital), which is a 400-bed acute care hospital that trains more than 500 medical residents and fellows each year. *Id.* OHSU Hospital has participated in the 340B Program since 1993. *Id.* The 340B Program savings directly support OHSU Hospital's operations and training programs.

In the wake of rapidly increasing drug prices, Congress created the 340B Program in 1992 to permit covered entities, all of which are safety-net providers, including primarily hospitals and grant-funded clinics, to purchase certain drugs at the same discounted rate that state Medicaid programs pay. *Id.* at ¶¶ 32–33; *see also* 42 U.S.C. § 256b(a)(1) & (a)(4); 42 U.S.C. § 1396r-8. Under the 340B statute, Congress also empowered drug manufacturers to conduct audits of covered entities to evaluate their compliance with certain provisions, provided the audits are conducted in accordance with HRSA guidelines. ECF No. 1, ¶ 35 (citing 42 U.S.C. § 256b(a)(5)(C). Those guidelines, set forth at 61 Fed. Reg. 65,406 *et seq*. (hereinafter "Manufacturer Audit Guidelines" or "Guidelines"), include requiring the manufacturer to provide notice to the covered entity of potential violations the manufacturer believes the covered entity has committed. *Id.* at 65,410. This notice triggers a mandatory thirty-day period for the parties to "attempt in good faith to resolve the matter." *Id.* If the good faith attempt fails, only then may the manufacturer inform HRSA of its intent to audit the covered entity. *Id.*

On April 22, 2024, J&J requested a meeting with OHSU purportedly to "better understand the reasons for the growth in [its] 340B utilization program." ECF No. 1, Ex. 1, p.1. OHSU set a meeting for May 3, 2024, but the meeting was subsequently cancelled because one of J&J's necessary attendees was unavailable at that time. *Id*. at pp. 2-3. On May 16, 2024, OHSU's Chief

2

Operating Officer Joe Ness sent J&J a letter requesting, among other things, additional information about the basis of the inquiry. J&J never responded to that letter. *Id*. at pp. 5-8. At no point throughout the course of communications with J&J, or subsequently, did J&J disclose that it was seeking to audit OHSU's 340B program, nor did J&J provide notice of alleged potential violations.

As indicated by J&J's auditor, Deloitte & Touche LLP, HRSA granted J&J approval to audit OHSU on June 19, 2024. ECF No. 1, Ex. 6, p. 1. Thus, J&J never provided any notice to OHSU of potential violations before HRSA approved J&J's audit of OHSU, let alone the requisite thirty-day notice. *See* ECF No. 1, Ex. 8 (HRSA email dated July 10, 2024 admitting it approved the audit of OHSU despite HRSA's tacit acknowledgement that OHSU had not received notice of any alleged violations from J&J.)

After filing this action, OHSU requested that J&J refrain from pursuing the audit of OHSU during the pendency of this action. **Ex. 1**, Email from J. Junger to J. Handwerker dated Aug. 7, 2024. J&J, through its counsel, declined, stating that "the filing of these suits does not halt J&J's audits" and that "J&J intends to move forward with its audit … consistent with the audit work plans that HRSA approved." **Ex. 2,** Email from J. Handwerker to J. Junger dated Aug. 8, 2024. OHSU also requested that HRSA refrain from "remov[ing] [OHSU] from the 340B Program or tak[ing] similar enforcement actions while th[is] challenge[] [is] pending." **Ex. 3**, Email from T. Nova to C. Britton dated Aug. 7, 2024. HRSA confirmed receipt of OHSU's request the same day yet said nothing about possibly terminating OHSU from the 340B Program. **Ex. 4**, Email from C. Britton to T. Nova dated Aug. 7, 2024. Instead, HRSA waited more than three months to send OHSU a substantive letter, in which it demanded that OHSU provide a start date for the audit by November 26 or otherwise face potential termination from the 340B Program. **Ex. 5**, Ltr. From C. Britton to J. Ness dated Nov. 12, 2024.

3

On November 18, 2024, OHSU informed counsel for the Defendants that OHSU intended to file a motion for a temporary restraining order. **Ex. 6**, Emails between B. Helms and J. Bardo (dated Nov. 18 & 20, 2024). DOJ, on behalf of Defendants, responded on November 20 and indicated that Defendants oppose OHSU's motion. (*Id.*). DOJ further noted that "HRSA's *typical practice* is to make termination of a covered entity effective as of the start of the next quarter," and pursuant to that typical practice any such termination of OHSU would not be before January 1, 2025. (*Id.*) (emphasis added). However, DOJ's explanation of HRSA's "typical practice" does not assure OHSU that HRSA would not deviate from its "typical practice" and choose to terminate OHSU's 340B covered entity status at some point earlier than January 1, 2025. (*See id.*). Indeed, as far as OHSU is aware, there is nothing that would prevent HRSA from terminating OHSU's 340B covered entity status as early as November 27, 2024.

As for covered entities' obligations, the 340B statute prohibits covered entities from engaging in "duplicate discounts" and "diversion," as set forth in 42 U.S.C. § 256b(a)(5)(A)–(B). It also establishes penalties for such violations. *Id.* at §§ 256b(a)(5)(D) & (d)(2)(B)(v). If HRSA determines that a covered entity violated these provisions of the 340B statute, it can impose monetary penalties or even "remov[e] the covered entity from the drug discount program" altogether. *Id.* at §§ 256b(a)(5)(C); 256b(d)(2)(B)(v)(I) & (II). The 340B statute does not clearly establish a penalty for a covered entity that does not participate in a manufacturer audit. However, through its November 12 letter, HRSA has taken the position that it could remove OHSU from the program unless OHSU participates in J&J's audit. **Ex. 5**.

Because of the significant repercussions that can occur should OHSU refuse to comply with what it believes to be an unlawfully approved audit, OHSU now moves the Court for immediate entry of a temporary restraining order under Federal Rule of Civil Procedure 65(b) to

4

maintain its status quo as a covered entity under the 340B Program. Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff is willing and able to provide proper security in an amount specified by the Court—although OHSU is not aware of any costs or damages that Defendants will sustain should they ultimately prevail in this action.

## Argument

**I.   OHSU has shown that all four factors for a temporary restraining order favor enjoining HRSA**

### A.   Legal standard for a temporary restraining order

Temporary restraining orders are measured against the same standard as preliminary injunctions. *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009); *accord. Costa v. Bazron*, 456 F. Supp. 3d 126, 133 (D.D.C. 2020). This relief is "generally a 'stopgap measure' meant only to 'preserve the relative positions of the parties' until trial." *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022) (citation omitted). A plaintiff moving for a temporary restraining order must make a "clear showing" that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of relief, (3) the balance of equities favor an injunction, and (4) the public interest is served by an injunction. *Id.*; *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### B.   OHSU is likely to succeed on the merits

Under the Administrative Procedure Act, courts must "hold unlawful and set aside" any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; … [or] (D) without observance of procedure required by law…." 5 U.S.C. § 706(2)(A) & (D). Likewise, courts "must [] enforce the 'unambiguous' terms of existing regulations…" *Cont'l Res., Inc. v. Gould*, 410 F. Supp. 3d 30, 35 (D.D.C. 2019) (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000)). Furthermore, the APA requires agencies to engage in

5

"reasoned decisionmaking." *Gould*, 410 F. Supp. 3d at 36 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 52 (1983))[1] Finally, where an agency acts contrary to its own regulations to the prejudice of others, its actions are "contrary to law and thus arbitrary and capricious." *Elevance Health, Inc. v. Becerra*, — F. Supp. 3d. —, 2024 WL 2880415, *18 (D.D.C. 2024) (*citing United States ex re. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954)).

### 1. The audit guidelines are legally binding

When HRSA proposed the Manufacturer Audit Guidelines in the Federal Register, followed the customary notice and comment process, and then published the final version in the Federal Register, HRSA made the Guidelines binding on entities that participate in the 340B Program—both manufacturers and covered entities. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 683 (2020) (a document published in the Federal Register is binding if it "contain[s] all of the elements of a notice of proposed rulemaking as required by the APA."). Specifically, in 1994, the Secretary published a Notice with proposed Guidelines and collected public comments on them. 59 Fed. Reg. 30,021 (June 10, 1994). In 1996, the Secretary responded to comments and published the Guidelines in a Final Notice. 61 Fed. Reg. 65,406. In both documents, he invoked section (a)(5)(C) and provided not just a summary, but a full copy of the Guidelines in proposed and then final form. These publications are "sufficient to give notice of the contents of the document to a person subject to or affected by it." 44 U.S.C. § 1507. Therefore, there is no question that the Guidelines are binding.

---

[1] Because the instant Motion, and this action in general, simply asks the Court to require HRSA to comply with the unambiguous terms of its own regulation, the Court need not grapple with any issues relating to the termination of *Chevron* deference by the *Loper Bright* decision. That is, OHSU is not asking the Court to determine whether HRSA's regulations correctly interpret a statute. Rather, OHSU is merely asking the Court to require HRSA to comply with its own unambiguous regulation.

### 2. OHSU is likely to succeed on the merits because HRSA failed to follow the Manufacturer Audit Guidelines, prejudicing OHSU

Here, HRSA's audit guidelines are clear and unambiguous: a manufacturer that suspects a covered entity of committing a violation "***shall*** notify the covered entity in writing when it believes the covered entity has violated provisions of section 340B." 61 Fed. Reg. at 65,410 (emphasis added). After receiving such notice, the "manufacturer and the covered entity ***shall*** have at least 30 days from the date of notification to attempt in good faith to resolve the matter." *Id.* (emphasis added). If, and only if, "the matter is not resolved and the manufacturer desires to perform an audit, [then] the manufacturer ***must*** file an audit work plan" with HRSA. *Id.* (emphasis added). Only after reviewing the audit work plan may HRSA decide to permit the audit to proceed by declining to intervene. *Id.* Because the thirty-day good faith period is mandatory, HRSA determined that it is not necessary for a covered entity to review and comment on a proposed audit work plan before HRSA approves it. *Id.* at 65,408.

Yet here, OHSU never received notice of any potential violations from J&J. ECF No. 1, Ex. 8. Because notice was not given, OHSU and J&J never engaged in a thirty-day good faith period. Yet HRSA granted approval for J&J to audit OHSU. ECF No. 1, Ex. 6, p. 1. Consequently, HRSA's decision to permit the audit to proceed ignored its binding regulation and departed from "reasoned decisionmaking." Accordingly, the likely outcome of this litigation is that the Court will have to reverse HRSA's decision permitting J&J to audit OHSU. *See Gould*, 410 F. Supp. 3d at 36–37 (reversing agency decision that was "plainly erroneous [and] inconsistent with the regulation" and departed from "reasoned decisionmaking"); *see also Genesis Health Care, Inc. v. Becerra*, 701 F. Supp. 3d 312, 321 (D.S.C. 2023) (noting that after a covered entity initiated a lawsuit against HRSA, HRSA "vacated its audit findings and reinstated [the covered entity] into the 340B Program" and granting summary judgment in part against HRSA because of its "lack of

7

consistency").

In short, because HRSA departed from the binding, unambiguous language of its own regulation, and in so doing deviated from reasoned decisionmaking, HRSA has no leg to stand on to support its decision approving the audit of OHSU. Therefore, OHSU is likely to prevail on the merits, which means this factor strongly favors instituting a temporary restraining order against HRSA to maintain OHSU's status as a covered entity.

### C. OHSU is likely to suffer irreparable harm in the absence of temporary injunctive relief

In general, "courts are institutionally wary of granting relief that disrupts, rather than preserves, the status quo, especially when that relief cannot be undone if the non-movant ultimately wins on the merits." *Singh*, 56 F.4th at 95 (citation omitted). Conversely, courts are more inclined to grant injunctive relief where the moving party seeks to maintain the status quo. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*, 298 F. Supp. 2d 27, 34 (D.D.C. 2002) (granting preliminary injunction that "merely holds the defendants to the promise they made when they voluntarily entered their employment agreements").

Here, OHSU is currently a covered entity under the 340B Program and has been since 1993. Through this Motion, it respectfully requests simply to maintain that status until the Court is able to set a hearing on this motion, at which time Defendants should be directed to show cause, if there be any, why an injunction should not be issued.

On the other hand, should HRSA decide, and be permitted, to terminate OHSU's participation in the 340B Program while this lawsuit is pending, such a decision would be catastrophic for OHSU. OHSU is working to quantify the exact harm it would suffer from termination in the 340B Program, which OHSU expects to present in a forthcoming Motion for Preliminary Injunction, after it verifies the savings it enjoys under the 340B Program and the cost-

saving measures it would have to employ should it immediately lose access to those savings. However, preliminary estimates suggest OHSU could instantly face tens of millions in additional costs per month should it lose access to 340B discount pricing. Were that to occur, OHSU would almost immediately need to start looking at ways to reduce costs, such as eliminating programs. *See Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 56 (D.D.C. 2020) ("'Obstacles' that 'unquestionably make it more difficult for an organization to accomplish its primary mission … provide injury for purposes both of standing and irreparable harm.'") (cleaned up, citation omitted). And when programs are eliminated, patients lose access to treatment they need. *See id.* at 59 ("The Court also does not turn a blind eye to the reality that here, 'economic loss' … means 'reducing [health-care] services' to patients, many of whom are indigent.") (citation omitted).

Moreover, if HRSA terminated OHSU as a covered entity as it has threatened to do, OHSU would be unable to remedy that harm. As HRSA specifically notes, "We do not authorize covered entities to reclassify a purchase as 340B eligible after the fact. Covered entities participating in the 340B Program are responsible for requesting 340B pricing at the time of the original purchase." HRSA FAQ available at https://www.hrsa.gov/about/faqs/does-hrsa-authorize-covered-entities-retroactively-change-previous-quarters-transactions-non-340b (last reviewed by HRSA June 2024, last accessed November 21, 2024). That is, if HRSA removes OHSU from the 340B Program while this case is pending, OHSU would not be able to recover the lost savings after the fact.

Therefore, this factor strongly favors a temporary restraining order.

### D.    The balance of equities supports a temporary restraining order

The Supreme Court and the D.C. Circuit Court have noted that when deciding motions for temporary restraining orders, courts must "carefully 'balance the competing claims of injury' … and weigh the 'effect on each party of the granting or withholding of the requested relief.'" *Singh*, 56 F.4th at 96 (quoting *Winter*, 555 U.S. at 24).

As noted above, not granting OHSU's requested relief and allowing HRSA to terminate it from the 340B Program would be disastrous both for OHSU and the hundreds of thousands of patients that it serves. Also as noted above, OHSU would not be able to correct that harm retroactively.

Conversely, there would be no harm whatsoever to HRSA, J&J, or the public at large should OHSU remain in the 340B Program pending the resolution of this case. If the Court ultimately holds that HRSA acted appropriately in approving the audit of OHSU, then J&J may proceed with investigating its suspicions of a violation and OHSU will fully cooperate in the audit process. And if the audit finds that OHSU violated provisions of the 340B statute, then HRSA may take appropriate action at that time, including imposing monetary penalties or terminating OHSU's involvement in the 340B Program. *See* 42 U.S.C. §§ 256b(a)(5)(D) & (d)(2)(B)(v). In essence, HRSA and J&J—and the public at large—would be in the same position at the end of this case that they were at the outset of this litigation.

As a result, this factor favors a temporary restraining order.

### E.     A temporary restraining order supports the public interest

When a government agency is a party, the "harm to the [agency] and the public-interest factor are 'one and the same' because … 'the government's interest *is* the public interest." *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 116 (D.D.C. 2022) (quoting *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)). If the government cannot make any "significant showing that the public … may be harmed by the entry" of a temporary restraining order, then the temporary restraining order is in the public interest. *Chef Time*, 646 F. Supp. 3d at 116.

As noted above, the only party facing possible harm is OHSU—and the potential harm is dire. HRSA, on the other hand, faces no potential damage whatsoever. And the same goes for J&J,

10

the manufacturer seeking to audit OHSU, as well as the general public. Hence, all four factors favor granting the temporary restraining order that OHSU seeks. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016) (granting injunction in part because the harms to the nonmoving party were "insufficiently grave to overcome the much more substantial countervailing harms" faced by the moving party).

## Conclusion

For the reasons set forth above, the Court should enjoin Carole Johnson, in her official capacity as Administrator, Health Resources and Services Administration, and Xavier Becerra, in his official capacity as Secretary, United States Department of Health and Human Services, from taking any action to alter, suspend, or terminate Oregon Health & Science University's status as a Covered Entity in the 340B Program.

Respectfully submitted,

By: */s James Junger*
Tyler James Junger
DC Bar Identification Number: WI0036
jjunger@hallrender.com
Todd A. Nova (pro hac vice)
tnova@hallrender.com
Hall, Render, Killian, Heath & Lyman, P.C.
330 East Kilbourn Avenue
Suite 1250
Milwaukee, WI 53202
(414) 721-0922


Brandon C. Helms (pro hac vice)
bhelms@hallrender.com
Hall, Render, Killian, Heath & Lyman, P.C.
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
(248) 457-7847

*Attorneys for Plaintiff Oregon Health & Science University*

12

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 22, 2024 a true and correct copy of the foregoing *Motion for Temporary Restraining Order* was served via the CM/ECF System to all parties of record.

By: */s  James Junger*
Tyler James Junger
DC Bar Identification Number: WI0036
jjunger@hallrender.com