UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OREGON HEALTH & SCIENCE UNIVERSITY,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLE JOHNSON, Administrator, Health Resources and Services Administration, et al.,<br><br>    Defendants. | Civil Action No. 24-2184 (RC) |

**DEFENDANTS' MOTION TO DISMISS AND**
**MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................................. i

Table of Authorities ............................................................................................................................ ii

Introduction ........................................................................................................................................ 1

Background ......................................................................................................................................... 1

    I.    Statutory and Regulatory Background. .............................................................................. 1

    II.    Allegations in the Complaint. ............................................................................................ 4

Legal Standards ................................................................................................................................... 5

    I.    Rule 12(b)(1) ........................................................................................................................ 5

    II.    Rule 12(b)(6) ........................................................................................................................ 5

Argument ............................................................................................................................................. 6

    I.    Oregon Health's Challenge to the Audit is not Ripe for Review and Thus the Court Lacks Subject Matter Jurisdiction. ................................................................................ 6

    II.    The Agency's Allowing Johnson & Johnson's Audit to Proceed Does Not Constitute a Final Agency Action Reviewable Under the APA. ............................................ 9

Conclusion ......................................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ............................................................................................................... 6

*Am. Nat'l Ins. Co. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) ............................................................................................. 5

*Army Corps. of Eng'rs v. Hawkes Co., Inc.*,
   578 U.S. 590 (2016) ............................................................................................................. 12

*Asante v. Azar*,
   436 F. Supp. 3d 215 (D.D.C. 2020) ....................................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 5, 6

*Atl. States Legal Found. v. EPA*,
   325 F.3d 281 (D.C. Cir. 2003) ............................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................... 5

*Belmont Abbey Coll. v. Sebelius*,
   878 F. Supp. 2d 25 (D.D.C. 2012) ......................................................................................... 8

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................................... 9

*Finca Santa Elena, Inc. v. Army Corps of Eng'rs*,
   873 F. Supp. 2d 363 (D.D.C. 2012) ....................................................................................... 8

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ............................................................................................................... 8

*Food & Water Watch v. EPA*,
   5 F. Supp. 3d 62 (D.D.C. 2013) ......................................................................................... 7, 8

*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) ....................................................................................................... 10, 12

*Full Value Advisors*,
   633 F. 3d .............................................................................................................................. 8

*Harper v. Werfel*,
   118 F.4th 100 (1st Cir. 2024) ............................................................................................... 11

*Herbert v. Nat'l Acad. of Scis.*,
   974 F.2d 192 (D.C. Cir. 1992) ............................................................................................... 5

*Holistic Candlers & Consumers Ass'n v. FDA*,
   770 F. Supp. 2d 156 (D.D.C. 2011) ....................................................................................... 9

*Indep. Equip. Dealers Ass'n v. EPA*,
   372 F.3d 420 (D.C. Cir. 2004) ............................................................................................. 13

*La. Env't. Action Network v. Browner*,
   87 F.3d 1379 (D.C. Cir. 1996) ............................................................................................... 8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................... 5

*Mass. Mfg. Extension P'ship v. Locke*,
   723 F. Supp. 2d 27 (D.D.C. 2010) .................................................................................. 11
*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ........................................................................................................... 6
*Nevada v. Dep't of Energy*,
   457 F.3d 78 (D.C. Cir. 2006) ......................................................................................... 6, 7
*Ohio Forestry Ass'n v. Sierra Club*,
   523 U.S. 726 (1998) ........................................................................................................... 7
*Oregonians for Floodplain Prot. v. Dep't of,
   Com.*, 334 F. Supp. 3d 66 (D.D.C. 2018) ..................................................................... 7, 8
*Papasan v. Allain*,
   478 U.S. 265 (1986) ........................................................................................................... 6
*Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*,
   324 F.3d 726 (D.C. Cir. 2003) ........................................................................... 9, 10, 11, 12
*Role Models Am., Inc. v. White*,
   317 F.3d 327 (D.C. Cir. 2003) ......................................................................................... 12
*Soundboard Ass'n v. FTC*,
   888 F.3d 1261 (D.C. Cir. 2018) .................................................................................... 9, 10
*Steenholdt v. FAA*,
   314 F.3d 633 (D.C. Cir. 2003) ......................................................................................... 14
*Thomas v. Principi*,
   394 F.3d 970 (D.C. Cir. 2005) ........................................................................................... 5
*Winter v. Cal. Med. Rev., Inc.*,
   900 F.2d 1322 (9th Cir. 1990) ......................................................................................... 11

**Statutes**

5 U.S.C. § 704 ............................................................................................................................ 9
5 U.S.C. § 706 ............................................................................................................................ 8
42 U.S.C. § 256(d)(3) ................................................................................................................ 4
42 U.S.C. § 256b ........................................................................................................................ 1
42 U.S.C. § 256b(a)(5)(A) ......................................................................................................... 2
42 U.S.C. § 256b(a)(5)(B) ......................................................................................................... 1
42 U.S.C. § 256b(a)(5)(C) ......................................................................................................... 2
42 U.S.C. § 256b(a)(5)(D) .................................................................................................... 3, 12
42 U.S.C. § 256b(d)(3) .................................................................................................... 7, 10, 12

**Regulations**

42 C.F.R. § 10.23(c) ................................................................................................................ 12

**Other Authorities**

61 Fed. Reg. 65 ................................................................................................................. passim

Defendant Carole Johnson, Administrator of the Health Resources and Services Administration ("HRSA" or the "Agency") respectfully moves to dismiss the complaint filed in this action by Oregon Health & Science University ("Oregon Health") under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) for a lack of subject-matter jurisdiction and a failure to state a claim, respectively.

## INTRODUCTION

Oregon Health complains that the Agency approved a manufacturer's audit of Oregon Health under the 340B Program (defined below) without Oregon Health being afforded a thirty-day period to engage in good-faith negotiations following adequate written notification. Oregon Health claims that the Agency's decision to permit the audit was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the Administrative Procedure Act ("APA"). Compl. ¶¶ 116–20 (ECF No. 1).

Oregon Health's claims should be dismissed for two reasons. First, the Court lacks jurisdiction to hear Plaintiff's APA claim because the claim is not ripe for review. Second, even if the claim were ripe, Oregon Health's APA claim fails because the Agency's decision to allow a manufacturer audit does not constitute "final" agency action. Moreover, the Agency's actions have been consistent with its published guidance.

## BACKGROUND

**I.     Statutory and Regulatory Background.**

Under 42 U.S.C. § 256b (the "340B Program"), certain statutorily eligible "covered entities" are entitled to purchase "covered outpatient drugs" at a discount from manufacturers who have agreed to participate in the Program. Those covered entities are subject to certain obligations. Specifically, covered entities must not resell or otherwise transfer 340B drugs to persons who are not their patients. 42 U.S.C. § 256b(a)(5)(B). This is known as the prohibition on diversion. Also,

covered entities must help ensure that manufacturers are not subject to overlapping price concessions under both Medicaid and the 340B Program for the same unit of drug. 42 U.S.C. § 256b(a)(5)(A). This is known as the prohibition on duplicate discounts.

The Agency's Office of Pharmacy Affairs administers the 340B Program under authority delegated by the Secretary of the Department of Health and Human Services ("the Department"). The Agency is authorized under the statute to audit covered entities. 42 U.S.C. § 256b(a)(5)(C). So, too, are participating drug manufacturers. *Id.* Covered entities must comply with the statute's audit requirements to remain eligible to participate in the program. *Id.* § 256b(a)(4), (a)(5). "A covered entity shall permit" a manufacturer to audit "the records of the entity that directly pertain to the entity's compliance with" the prohibitions on diversion and duplicate discounts "with respect to drugs of the manufacturer," so long as the manufacturer "act[s] in accordance with procedures established by the Secretary relating to the number, duration, and scope of audits." *Id.* The audit is "at the manufacturer's expense." *Id.* § 256b(a)(5)(C).

In 1996, following public notice and comment, the Agency published a final notice in the Federal Register entitled "Manufacturer Audit Guidelines and Dispute Resolution Process." 61 Fed. Reg. 65,406 (Dec. 12, 1996). This document implements the statutory instruction to "establish[]" "procedures" for 340B manufacturer audits. According to the guidance, the manufacturer must first "notify the covered entity in writing when it believes the covered entity has violated provisions of section 340B. The manufacturer and the covered entity shall have at least thirty days from the date of notification to attempt in good faith to resolve the matter." *Id*. at 65,410. Next, "[i]f the matter is not resolved and the manufacturer desires to perform an audit, the manufacturer must file an audit work plan with" the Agency. *Id.* The workplan must include a description of the "audit objectives," the "skill and knowledge" of audit personnel, the tests to be

used to "assess the covered entity's system of internal controls," and protections for patient confidentiality and proprietary information. *Id*. Furthermore, the covered entity must be given a minimum of fifteen days to prepare for the audit. *Id*. The 1996 notice includes "suggested audit steps" that manufacturers can use for preparing their work plan, and the manufacturer-submitted documentation must also explain that there is "reasonable cause . . . to believe that a covered entity may have violated" the statutory prohibition on diversion or duplicate discounts. *Id.* at 65,409-10.

The Agency reviews the manufacturer's work plan for "reasonable purpose and scope"; furthermore, "only one audit of a covered entity will be permitted at any one time" and "[n]ormally, audits shall be limited to an audit period of one year and shall be performed in the minimum time necessary with the minimum intrusion on the covered entity's operations." *Id*. If the Agency has concerns about the work plan, it works with the manufacturer "to incorporate mutually agreed-upon revisions to the plan." *Id.* at 65,410. If, after review of the work plan, the Agency determines that reasonable cause for the audit exists, "the Department will not intervene" in the manufacturer's audit of the covered entity. *Id*. After the audit is complete, the auditors must prepare an audit report, which is provided to the Agency and the covered entity. *Id*. The covered entity has thirty days to provide its response to the report's findings and recommendations, including any planned actions to address the findings. *Id*. After an audit and review of the findings (if any), the Agency may take enforcement action against the covered entity, which can include ordering the covered entity to reimburse the manufacturer for the amount of price reduction that the covered entity received in connection with the diversion or duplicate discount, 42 U.S.C. § 256b(a)(5)(D), (d)(2)(B)(v)(I), or a covered entity's removal from the 340(B) Program. *Id.* § 256b(d)(2)(B)(v)(II). Any enforcement action would depend on the audit's findings, the covered entity's response, as well as the agency's final determination on the matter, which could include adjudication of the

dispute through a 340B Administrative Dispute Resolution process initiated by the manufacturer. 42 U.S.C. § 256(d)(3).

## II. **Allegations in the Complaint.**

For purposes of this motion only, Defendant assumes the truth of the allegations in the complaint. Defendant reserves the right to contest the allegations in any future proceedings.

Plaintiff Oregon Health & Science University is a covered entity under the 340B Program. Compl. ¶ 29. On April 22, 2024, Oregon Health received an email from Johnson & Johnson, a pharmaceutical manufacturer, asking to discuss Oregon Health's "340B utilization." *Id.* ¶¶ 52–53. The following month, Joe Ness, the chief operating officer for Oregon Health, sent Johnson & Johnson a letter requesting additional information about the basis of the inquiry and asking that the manufacturer follow reasonable procedures derived from the Manufacturer Audit Guidelines when submitting future requests. *Id.* ¶ 55. Johnson & Johnson did not respond, and Oregon Health never received anything in writing from Johnson & Johnson stating that Johnson & Johnson believed Oregon Health engaged in diversion or took duplicate discounts. *Id.* ¶ 58. On June 20, 2024, Oregon Health received a letter from Deloitte & Touche, LLP ("Deloitte") stating that the Agency had approved Johnson & Johnson's request to audit Oregon Health just one day earlier and that Johnson & Johnson retained Deloitte to perform the audit. *Id.* ¶¶ 59-60. Six days later, an Agency official contacted Oregon Health and confirmed that the Agency determined that Johnson & Johnson's requested audit could proceed. *Id*. ¶ 69. On June 28, 2024, an attorney for Oregon Health contacted the Agency and asked the Agency to reconsider its decision to approve the audit, noting that Johnson & Johnson never informed Oregon Health in writing that Johnson & Johnson believed Oregon Health violated the 340B Statute. *Id.* ¶ 70. On July 10, 2024, the Agency sent Oregon Health a letter denying the request to reconsider the Agency's determination that the audit could proceed. *Id*. ¶ 73.

Oregon Health contends that the Agency's determination for Johnson & Johnson to proceed with auditing Oregon Health's 340B usage, even though Johnson & Johnson failed to provide the required written notice to Oregon Health, was arbitrary, capricious, and unlawful, and Plaintiff accordingly seeks relief under 706(2)(A) of the APA vacating and setting aside the Agency's decision.  Compl. ¶¶ 116-120.

## LEGAL STANDARDS

### I.   Rule 12(b)(1)

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### II.   Rule 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.  However, a court is not required to accept as true conclusory allegations or unwarranted

factual deductions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether the complaint sets forth sufficient factual allegations to support the plaintiff's claims for relief.

## ARGUMENT

**I.   Oregon Health's Challenge to the Audit is Not Ripe for Review, and Thus, the Court Lacks Subject Matter Jurisdiction.**

This Court lacks subject matter jurisdiction over Oregon Health's claims because the claims are not yet ripe for review. The ripeness doctrine requires that a litigant's claims be "constitutionally and prudentially ripe," so as to protect: (1) "the agency's interest in crystallizing its policy before that policy is subjected to judicial review," (2) "the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting," and (3) "the petitioner's interest in prompt consideration of allegedly unlawful agency action." *Asante v. Azar*, 436 F. Supp. 3d 215, 224 (D.D.C. 2020) (quoting *Nevada v. Dep't of Energy*, 457 F.3d 78, 83–84 (D.C. Cir. 2006)). "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). Here, Oregon Health fails to demonstrate that its claim is prudentially ripe.

To satisfy the prudential elements of ripeness, courts consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l*

*Park Hosp. Ass'n*, 538 U.S. at 808. In actions against government agencies, the inquiry focuses on: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Nevada v. Dep't of Energy*, 457 F.3d 78, 84 (D.C. Cir. 2006) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Oregon Health challenges the Agency's decision to allow an audit workplan. Compl. ¶ 117. But as further elaborated in part II below, Oregon Health does not challenge a final agency action. The Agency's decision to allow the Johnson & Johnson audit to proceed is the first step in the process to determine whether the Agency should take enforcement action against Oregon Health for diversion or duplicative discounts. Such enforcement action could come as a result of a manufacturer-initiated administrative dispute resolution petition after the audit, *see* 42 U.S.C. § 256b(d)(3), or as a result of the Agency's review of audit findings, *id.* §§ 256b(a)(5)(D), (d)(2)(B)(v). Oregon Health will have the opportunity to respond to and contest the findings from the audit before the Agency takes any enforcement action. 61 Fed. Reg. 65,410-11. The audit has not yet begun, however, and judicial intervention at this time would impede this administrative process and inappropriately interfere with further administrative action. Thus, dismissal for lack of subject matter jurisdiction is warranted. *See Oregonians for Floodplain Prot. v. Dep't of Com.*, 334 F. Supp. 3d 66, 73–74 (D.D.C. 2018) (dismissing on ripeness grounds in part to not interfere with the administrative process); *Food & Water Watch v. EPA*, 5 F. Supp. 3d 62, 80–81 (D.D.C. 2013) (same). And any "theoretical possibility of future hardship arising from the Court's decision to withhold review until the agency's position is settled does not overcome the finding that the

case is not yet 'fit' for judicial resolution." *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25, 41 (D.D.C. 2012).

Additionally, "[t]his Circuit has previously held that courts should refrain from 'intervening into matters that may best be reviewed at another time or in another setting,' even if the issue presented is 'purely legal' and 'otherwise fit for review.'" *Id.* at 41 (quoting *La. Env't. Action Network v. Browner*, 87 F.3d 1379, 1382 (D.C. Cir. 1996)). The Court would benefit from further factual development of the issues presented in this case. If Oregon Health eventually challenges the Agency's final agency action under the APA, the Court will have the benefit of an administrative record reflecting what the agency considered in making its decision and the agency's explanation for its final agency action. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."); *see also* 5 U.S.C. § 706 ("the court shall review the whole record…."). This factor also militates against review at this time. *See Oregonians for Floodplain Prot.*, 334 F. Supp. 3d at 73–74 (dismissing on ripeness grounds in part to allow for further factual development); *Food & Water Watch*, 5 F. Supp. 3d at 80–81 (same).

"Because of the prudential considerations which innervate the ripeness doctrine," courts will dismiss claims "'even if there is not a constitutional bar to the exercise of [ ] jurisdiction'" *Full Value Advisors*, 633 F. 3d at 1106 (internal quotation marks and citation omitted), and thus dismissal is warranted in this matter. *See, e.g.*, *Finca Santa Elena, Inc. v. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 370–71 (D.D.C. 2012) (granting motion to dismiss based on lack of prudential ripeness).

## II. The Agency's Allowing Johnson & Johnson's Audit to Proceed Does Not Constitute a Final Agency Action Reviewable Under the APA.

Even if the Court determines that it has jurisdiction and Oregon Health's claims are ripe for review, the Court still should dismiss the complaint because the Agency's decision to determine that the audit can proceed is not a "final agency action" for purposes of the APA. The APA's definition of "final agency action" expressly carves out "preliminary, procedural, or intermediate agency action." 5 U.S.C. § 704. Judicial review may be obtained under the APA only if the agency action is considered "final." *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003). To be final, agency action must be definitive, with a direct and immediate effect on the day-to-day business of the challenging party. *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003). An agency action is 'final for the purposes of [the APA]' only after a plaintiff has exhausted all administrative remedies expressly prescribed by statute or agency rule." *Holistic Candlers & Consumers Ass'n v. FDA*, 770 F. Supp. 2d 156, 163 (D.D.C. 2011) *aff'd*, 664 F.3d 940, 945 (D.C. Cir. 2012).

In *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), the Supreme Court established a two-part test for determining whether an agency action qualifies as final to be subject to judicial review: "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Both *Bennett* prongs must be met to make agency action final. *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018). Because the Agency's decision to allow the audit to proceed is only "interlocutory" in nature and did not consummate the Agency's decision-making process, Oregon Health's challenge fails the first prong of the *Bennett* test. And even if it did not, it nevertheless

- 9 -

fails on the second prong because the decision to allow the audit to proceed does not itself have legal consequences for Oregon Health.

Deciding that an audit can proceed is not final agency action because it is only a "threshold determination that further inquiry is warranted." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241 (1980). Here, the Agency has simply allowed Johnson & Johnson to audit, at its own expense, Oregon Health's use of the 340B Program. Compl. ¶¶ 69, 73. Additional steps are required before the Agency can take any action limiting Oregon Health's participation in the 340B Program or any other action based on the audit. Specifically, the auditor must prepare a report, Johnson & Johnson must send the report to Oregon Health, and Oregon Health must provide a response within thirty days. 61 Fed. Reg. 65,410. If Oregon Health agrees with the findings, then it must provide a "description of the actions planned or taken to address the audit findings and recommendations," but if Oregon Health disagrees, then Oregon Health must submit its rationale for the disagreement to Johnson & Johnson. *Id.* Johnson & Johnson could then elect to use the audit findings to bring a proceeding against Oregon Health under the 340B Program's administrative dispute resolution process. *See* 42 U.S.C. § 256b(d)(3). Only after the Agency has decided to take enforcement action would there be legal consequences for Oregon Health, and the agency's decision be subject to judicial review. *See id.* § 256b(d)(3)(C). At this stage, all of these potential outcomes are hypothetical. Johnson & Johnson has not yet conducted the audit or made any findings therefrom to which Plaintiff can respond, and the Agency cannot take any adverse action against Plaintiff based on a report that does not yet exist.

Deciding that an audit can proceed is not a final agency action because it is not "the culmination of [the Agency's] consideration of an issue." *Soundboard Ass'n*, 888 F.3d at 1267; *see also Automatic Sprinkler*, 324 F.3d at 734 (series of agency actions non-final, as "the agency

has not yet done that which the statutory scheme requires for its conduct to constitute final agency action"—namely, reach a final decision after an administrative proceeding); *Winter v. Cal. Med. Rev., Inc.*, 900 F.2d 1322, 1325-26 (9th Cir. 1990) (since agency's conclusions could change with additional information, "appellant's claim that the investigation itself represented final agency action lacks merit . . . . This court must give the agency an opportunity to formulate a final position."). Indeed, in similar circumstances, courts have found that initiating an audit or investigation-like proceeding does not satisfy the first prong of the *Bennet* final agency action test. *See Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024) (holding that the IRS's summons of the plaintiff's records is not a final agency action, because the summons is "far upstream of any potential tax enforcement actions."); *Automatic Sprinkler*, 324 F.3d at 734 (agency's investigatory actions are not final reviewable actions even if there are "practical consequences" for the regulated party); Order, *Benefitalign, LLC v. Ctr. for Medicare & Medicaid Servs.*, Civ. A. No. 24-2429 (JEB), (D.D.C. Sept. 30, 2024), ECF No. 17, ("given that [the Agency] is currently conducting an audit that will determine Plaintiffs' final status, it is unclear why the interim suspension could stand as the consummation of the agency's decisionmaking process"); *Mass. Mfg. Extension P'ship v. Locke*, 723 F. Supp. 2d 27, 38 (D.D.C. 2010) ("The plaintiffs are not entitled to any decision on the merits of those audits, however, since the audits have not yet culminated in any final agency action"). Because additional proceedings must occur before the Agency can take any action against Oregon Health, the Agency's decision to permit the audit is interlocutory and thus not a reviewable final agency action.

Moreover, Oregon Health cannot demonstrate that the Agency's decision to approve the audit was one in which "rights or obligations have been determined," as is required to satisfy the second *Bennet* prong. In evaluating the second prong, Courts look to whether the action has "direct

and appreciable legal consequences," *Army Corps. of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 598 (2016) (cleaned up), including by imposing an obligation, denying a right, or fixing some legal relationship. *Role Models Am., Inc. v. White*, 317 F.3d 327, 331-32 (D.C. Cir. 2003). Such consequences may occur when, among other things, an agency's definitive position has a direct and immediate effect on day-to-day operations of the party seeking review and if immediate compliance with the agency terms is expected. *Automatic Sprinkler*, 324 F.3d 726, 731 (finality is indicated by something that is "definitive" and has a "'direct and immediate . . . effect on the day-to-day business' of the party challenging the agency action" (quoting *Standard Oil,* 449 U.S. at 239)).

Although the Agency's decision required Oregon Health to cooperate with the auditor, mere compliance with the decision lacks any direct legal consequences because "during the audit process, the manufacturer must continue to sell covered outpatient drugs at the section 340B ceiling price to the covered entity being audited, and the covered entity must continue to comply with the requirements of section 340B(a)(5)." 61 Fed. Reg. 65,410. In other words, Johnson & Johnson must continue to sell Oregon Health the covered outpatient drugs at the discounted rate even as the audit is ongoing. *Id*. Oregon Health will only face legal consequences such as being liable to Johnson & Johnson for the value of the diversion or duplicate discount, or being removed from the 340B program, if the Agency makes certain determinations subsequent to the audit (i.e., if, after review of the audit findings, HRSA determines that "corrective" or "enforcement action" is warranted, or if a manufacturer initiates a claim through the administrative dispute resolution process and HRSA determines that enforcement is warranted at the conclusion of that process). *See* 42 U.S.C. § 256b(a)(5)(D); *id.* § 256b(d)(2)(B)(v)(I), (II); *see also* 42 C.F.R. § 10.23(c), (d).

At this stage, enforcement action is not "inevitable," and the Agency's decision to allow the audit to proceed does not obligate Oregon Health to do anything—that is, "no legal consequences flow from the agency's conduct to date." *Holistic Candlers*, 664 F.3d at 944. Even if non-compliance with Johnson & Johnson's audit request carries risk, "practical consequences, such as the threat of having to defend oneself in an administrative hearing should the agency actually decide to pursue enforcement, are insufficient to bring an agency's conduct under a Court's purview." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004). Accordingly, because the agency action that Oregon Health contests is not a reviewable "final agency action" under the APA, Plaintiff's claims should be dismissed.

Finally, Oregon Health claims that the Agency unlawfully allowed the audit to proceed because Johnson & Johnson did not provide the required written notice to Oregon Health, Compl. ¶ 117, and that Oregon Health did not have the opportunity to object to the lack of privacy protections for sensitive information that would be exchanged as part of the audit. *Id*. ¶ 64. Because Oregon Health has not identified a reviewable final agency action, the Court need not consider these arguments. But even if the Court were inclined to consider these issues, the Court should not grant Oregon Health any relief based on these arguments because the audit was initiated in a manner consistent with the Agency's published guidance.

Under the guidance, "the manufacturer shall notify the covered entity in writing when it believes the covered entity has violated provisions of section 340B. The manufacturer and the covered entity shall have at least 30 days from the date of notification to attempt in good faith to resolve the matter." 61 Fed. Reg. 65,410. The guidance does not mandate that the notice have a specific form or contain specific content. *Id.* The correspondence with Johnson & Johnson that Oregon Health attached to their complaint demonstrates that Johnson & Johnson complied with

the guidance. Johnson & Johnson contacted Oregon Health requesting time "to discuss your covered entity's 340B program. Specifically, we would like to discuss and ask questions regarding your entity's 340B Utilization." Email of Apr. 22, 2024 (ECF No. 1-1 at 1). In subsequent correspondence, Johnson & Johnson stated that they specifically sought to have "a good faith discussion on the growth of your entity's 340B utilization." Email of May 15, 2024 (ECF No. 1-1 at 3). Based on these emails, Oregon Health was on notice that Johnson & Johnson suspected that Oregon Health was misusing the program, and that Johnson & Johnson was attempting "in good faith to resolve the matter." 61 Fed. Reg. 65,410.

Likewise, Oregon Health's objection to the privacy protections in the audit workplan do not serve as a basis for the Court to grant any relief to Oregon Health stemming from the Agency's decision to allow the audit to proceed. Compl. ¶ 64. The manufacturer submits the audit work plan to the Agency, and the guidance does not allow for "the covered entity to review and comment on the manufacturer's proposed workplan once it has been reviewed by the Department." 61 Fed. Reg. 65,408. Indeed, the guidance does not require the manufacturer to share the audit workplan with the covered entity at any prior to submitting it to the Agency. *Id.* In allowing the audit to proceed, the Agency was satisfied that the audit workplan had sufficient procedures "to protect patient confidentiality and proprietary information." 61 Fed. Reg. 65,410. Thus, Oregon Health's objection to any particular provision in the audit workplan is not a basis for the Court to intervene to stop the audit.

To be sure, Federal agencies must "follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions." *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003). Because the administrative process is still ongoing and the agency complied with its guidance in allowing Johnson & Johnson to proceed with the audit, the Court should not intervene.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiff's complaint.

Dated: December 3, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____*/s/ John J. Bardo*_____
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*