UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OREGON HEALTH & SCIENCE
UNIVERSITY,

        Plaintiff,

    v.

CAROLE JOHNSON, Administrator, Health
Resources and Services Administration, et al.,

        Defendants.

Civil Action No. 24-2184 (RC)

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

Table of Authorities ……………………………………………………………………....ii

Introduction ……………………………………………………………………………1

Argument …………………………………………………………...………………….1

    I.   Allowing the Johnson & Johnson Audit to Proceed was not a Final Agency Action ………1

    II.  The Agency Has Not Taken Any Actions Ripe for Judicial Review ………………….....7

    III. The Agency's Process Has Been Consistent with the 340B Program Guidance ………..…9

Conclusion …………………………………………………………………...……………..11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967)........................................................................................................7

*Ameren Servs. Co. v. FERC*,
893 F.3d 786 (D.C. Cir. 2018) .......................................................................................8

*Bennett v. Spear*,
520 U.S. 154 (1997)........................................................................................................1

*Ciba-Geigy Corp. v. EPA*,
801 F.2d 430 (D.C. Cir. 1986) .......................................................................................2

*Clean Air Implementation Project v. EPA*,
150 F.3d 1200 (D.C. Cir. 1998) .....................................................................................9

*Cont'l Air Lines v. CAB*,
522 F.2d 107 (D.C. Cir. 1975) .......................................................................................8

*ForUsAll, Inc. v. Dep't of Lab.*,
691 F. Supp. 3d 14 (D.D.C. 2023) .................................................................................3

*FTC v. Owens-Corning Fiberglas Corp.*,
626 F.2d 966 (D.C. Cir. 1980) .......................................................................................6

*Genesis Healthcare, Inc. v. Becerra*,
39 F.4th 253 (4th Cir. 2022) .......................................................................................3, 4

*Harper v. Werfel*,
118 F.4th 100 (1st Cir. 2024)..........................................................................................2

*Hearth, Patio & Barbecue Assoc. v. EPA*,
11 F.4th 791 (D.C. Cir. 2021).........................................................................................4

*Holistic Candlers v. FDA*,
664 F.3d 940 (D.C. Cir. 2012) ....................................................................................3, 8

*Janay v. Blinken*, Civ. A.,
No. 23-3737 (RDM), 2024 U.S. Dist. LEXIS 124714 (D.D.C. Jul. 16, 2024)..........7

*Nat'l Wildlife Fed'n v. EPA*,
945 F. Supp. 2d 39 (D.D.C. 2013) .................................................................................3

*Pub. Citizen v. Off. of U.S. Trade Representative*,
970 F.2d 916 (D.C. Cir. 1992) .......................................................................................8

*RAI Care Ctrs. of Md. I, LLC v. OPM*,
459 F. Supp. 3d 124 (D.D.C. 2020) ...............................................................................7

*Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission*,
324 F.3d 726 (D.C. Cir. 2003) ....................................................................................2, 3

*Statewide Bonding, Inc. v. Dep't of Homeland Sec.*,
980 F.3d 109 (D.C. Cir. 2020) .......................................................................................7

*Ticor Title Ins. Co. v. FTC*,
814 F.2d 731 (D.C. Cir. 1987) .......................................................................................9

*Unity08 v. Fed. Election Comm'n*,
596 F.3d 861 (D.C. Cir. 2010) .......................................................................................8

**Statutes**

42 U.S.C. § 256b(a)(5)(C) ............................................................................................................ 11

Defendants the Secretary of Health and Human Services and the Administrator of the Health Resources and Services Administration (the "Agency") respectfully submit this reply in further support of their motion to dismiss (ECF No. 18).[1]

## INTRODUCTION

In its opposition to Defendants' motion to dismiss ("Opp'n," ECF No. 22) Plaintiff Oregon Health & Science University ("Oregon Health") fails to raise any arguments that would warrant denying the Agency's motion to dismiss.  The Agency's decision to allow Johnson & Johnson to proceed with the audit is an interlocutory step and thus not a final agency action or ripe for review. Additionally, despite Oregon Health's representations to the contrary, the exhibits that Oregon Health attached to their complaint demonstrate that the Agency's process for allowing Johnson & Johnson to proceed with the audit adhered to the published 340B Guidance. *See* 61 Fed. Reg. 65,406.

## ARGUMENT

**I.    Allowing the Johnson & Johnson Audit to Proceed was not a Final Agency Action.**

The Agency's decision to allow Johnson & Johnson's audit to proceed did not mark the "consummation' of the agency's decision-making process" and is not one by which "rights or obligations have been determined," or from which "legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  Thus, the Agency's actions to date are not a final agency action reviewable under the APA.

The Agency has not taken any action to remove Oregon Health from the 340B Program or any other enforcement action, rather the Agency has simply advised Oregon Health to cooperate

---

[1]    Defendants inadvertently neglected to identify the Secretary as joining the Administrator's motion in the underlying motion to dismiss, Mot. at 5 (ECF No. 18), but the docket entry reflects that the motion was filed on behalf of both the Secretary and the Administrator in their official capacities.

with an audit that Johnson & Johnson will conduct at its own expense. Letter from Britton (Nov. 12, 2024) (ECF No. 16-5); Email of Jun. 26, 2024 (ECF No. 1-6). In in arguing that the Agency's actions amount to a final agency action reviewable under the APA, Oregon Health analogizes the Agency's actions to date to the Environmental Protection Agency's actions in *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986). *See* Opp'n at 12-13. But the dispute in *Ciba-Geigy* centered on whether a pesticide company was entitled to a hearing before the EPA imposed labeling changes or use restrictions on the company's product. The company raised "a pure legal question as to what procedures EPA was obliged to follow before" initiating an enforcement action, specifically, "requiring a labeling change." *Id.* at 435. In contrast, Oregon Health's claims are not about what procedures the Agency must follow before initiating an enforcement action, rather, Oregon Health's claims are about what procedures the Agency must ensure a third party completed before that third party conducts an audit of Oregon Health's 340B program participation. Compl. ¶ 117 (the Agency's "decision to authorize [Johnson & Johnson's] audit request, even though the manufacturer failed to provide the required written notice to Plaintiff, was . . . unlawful"). Unlike the required labeling change in *Ciba-Geigy*, an audit is not a final agency action because an audit is "far upstream of any potential [] enforcement actions." *Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024).

The Agency's actions are more akin to *Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission*, 324 F.3d 726, 729 (D.C. Cir. 2003) where the Consumer Product Safety Commission informed a sprinkler head manufacturer that the Commission "intended to make a preliminary determination that the sprinkler heads present a 'substantial product hazard' as defined by the Consumer Product Safety Act," and requested that the manufacturer take "voluntary corrective action." The D.C. Circuit found that Commission's actions did not amount

to a final agency action because the Commission was merely conducting an investigation that required the manufacturer's cooperation. *Id.* at 731-32. The Commission had "not yet made any determination or issued any order imposing any obligation on [the manufacturer], denying any right of [the manufacturer], or fixing any legal relationship." *Id.* at 732. The manufacturer was entitled to a formal adjudication before the Commission issued any enforcement action. *Id.* Similarly, Oregon Health will be entitled to respond to the audit report and contest Johnson & Johnson's allegations in a hearing before the Agency's Office of Pharmacy Affairs before the Agency takes any enforcement action. 61 Fed. Reg. 65,410.

Moreover, in its correspondence with Oregon Health, the Agency stated that it "reserves the right" to remove Oregon Health from the 340B Program if Oregon Health fails to comply with its statutory obligation to permit the audit. Letter from Britton (Nov. 12, 2024) (ECF No. 16-5). To this day, the Agency has not removed Oregon Health from the program even though Oregon Health has resisted cooperating with the audit since July 2024. A warning letter that a regulated party's actions may lead to enforcement action but would not "inevitably" do so does not represent the consummation of an agency's decision-making process. *Holistic Candlers v. FDA*, 664 F.3d 940, 944 (D.C. Cir. 2012); *see also ForUsAll, Inc. v. Dep't of Lab.*, 691 F. Supp. 3d 14, 27 (D.D.C. 2023) ("the statement that the Department will 'take appropriate action to protect the interests' also does not indicate that any enforcement action is imminent or inevitable."); *Nat'l Wildlife Fed'n v. EPA,* 945 F. Supp. 2d 39, 45 (D.D.C. 2013) ("The fact that an agency will apply a regulation if certain events take place in the future does not satisfy the final agency action requirement for purposes of an as-applied challenge.").

The final agency action analysis in *Genesis Healthcare, Inc. v. Becerra* 39 F.4th 253, 262-63 (4th Cir. 2022) does not support Oregon Health's assertion that the Agency's decision to

allow Johnson & Johnson to conduct the audit is a final agency action. Oregon Health relies on dicta from *Genesis Healthcare* 39 F.4th at 262 stating that the covered entity's "challenge to the 1996 Guidelines was also likely a challenge to a final agency action." Opp'n at 17. The covered entity in *Genesis Healthcare* was challenging the guidance's definition of "patient" and contended that the definition that the Agency promulgated in the guidance was inconsistent with the text of the 340B statute. *Genesis Healthcare* 39 F.4th at 261. Unlike the covered entity in *Genesis Healthcare*, Oregon Health is not challenging the legality of the 340B guidance or claiming that any provision in the guidance is inconsistent with the enabling statute, rather, Oregon Health is claiming that the Agency failed to comply with the 340B Guidance that Oregon Health conceded is lawful guidance. Compl. ¶ 117; Opp'n at 24.

*Hearth, Patio & Barbecue Assoc. v. EPA*, 11 F.4th 791 (D.C. Cir. 2021), is inapplicable for similar reasons. Opp'n at 22. The plaintiff in *Hearth, Patio & Barbecue*, 11 F.4th at 795, challenged an EPA rule allowing wood burning heaters to be audited for compliance with emissions standards in a different laboratory than where the heater was certified as arbitrary and capricious. In contrast, Oregon Health has not brought a facial challenge to the 340B Guidance. Compl. ¶ 127.

The Agency's decision to allow Johnson & Johnson to conduct the audit does not affect Oregon Health's ability to benefit from the 340B Program or affect Johnson & Johnson's obligation to sell drugs to Oregon Health at the 340B rate. 61 Fed. Reg. 65,410. Oregon Health's arguments that the Agency's decision to allow the audit has established "rights and obligations" from which "legal obligations will flow" is primarily based on assumptions about how Johnson & Johnson will conduct itself during the audit including that it will use the information pertained from the audit for nefarious purposes. Opp'n at 14-15. These concerns are overstated. Deloitte

& Touche ("Deloitte"), the entity that will be performing the audit on Johnson & Johnson's behalf, will not disclose patient information or other proprietary information that Deloitte obtains through the audit to Johnson & Johnson.  Deloitte Document Request List at 4 (ECF No. 1-3).  Deloitte also permitted Oregon Health to redact proprietary business information that is "not related to the prevention of diversion or duplicative discounts."  *Id.*  Further, Deloitte disclaimed any interest in irrelevant patient health information and personally identifiable information, by instructing Oregon Health to only provide such information when Deloitte specifically requests specific categories of this information such as prescription numbers and patient id numbers.  *Id.*  Most importantly, Oregon Health need not simply rely on Deloitte's assurance that patient information and proprietary commercial information supplied during the audit will not be disclosed to Johnson & Johnson because the guidance prohibits the auditor from sharing this information with the manufacturer.  61 Fed. Reg. 65,409 ("Confidential patient information and/or proprietary information which auditors may access in the performance of an audit will not be disclosed to the manufacturer.")

In promulgating the guidance, the Agency explained that it did not "believe there is a need for the covered entity to comment on a manufacturer's submission of an audit workplan," or that "there is a need for the covered entity to review and comment on the manufacturer's proposed workplan once it has been reviewed by the Department."  61 Fed. Reg. 65,408; see also, Letter from Britton (Aug. 9, 2024) (ECF No. 1-8) ("Access to the [audit workplan], is neither a requirement in the 340B statute nor the Manufacturer Audit Guidelines.").  Upon receiving the audit workplan, the Agency is required to review the plan "to ensure that audit work performed is relevant to the audit objectives while protecting patient confidentiality and information of the covered entity which is considered proprietary."  61 Fed. Reg. 65,406.  Consistent with the

guidance, the Agency reviewed the audit workplan at issue in this case and determined that, Johnson & Johnson had shown "reasonable cause" to conduct the audit and that "[Johnson & Johnson] identified the scope of the audit to only include a review for duplicate discounts or diversion pursuant to the requirements under section 340B(a)(5)(C) of the Public Health Service Act[;]" thus the Agency did "not object to the Audit workplan."    Letter from Britton (Jul. 12, 2024) (ECF No. 1-3); Letter from Britton (Aug. 9, 2024) (ECF No. 1-8).    The Agency's determination is afforded a presumption of good faith.    *See FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 975 (D.C. Cir. 1980) ("agencies are entitled to a presumption of administrative regularity and good faith").

Although the Agency determined that the audit was not overbroad, Letter from Britton (Jul. 12, 2024) (ECF No. 1-3), to the extent that Oregon Health has concerns about the scope of the proposed audit, the Agency expects that Oregon Health work with Johnson & Johnson to reach "reasonable, practical compromises about the information necessary to complete the audit-as is typical in these sorts of situation."    Britton Decl. ¶ 15, *Univ. of Wash. Med. Ctr. v. Becerra*, Civ. A. No. 24-2998 (RC) (D.D.C.), ECF No. 22-1. The Agency also encouraged Johnson & Johnson and its auditor "to work in good faith and allow flexibility should the covered entity need additional time to prepare the data files."    Letter from Britton (Jul. 12, 2024) (ECF No. 1-3).    There is no indication that Oregon Health attempted to reach any compromises with Johnson & Johnson on the scope of the audit.    On the contrary, Oregon Health asserts "there is no guarantee that [Johnson & Johnson] would agree to narrow the scope." Opp'n at 14.    Rather than attempt to reach a compromise with Johnson & Johnson, or simply produce records to Johnson & Johnson demonstrating that Johnson & Johnson's suspicion about diversion and duplication was

unfounded, Oregon Health filed a lawsuit to stop the audit, and for the last six months has focused its attention on the lawsuit.

Finally, Oregon Health's claim that the Agency failed to comply with Local Rule 7(n) by not serving an administrative record lacks merit. Opp'n at 28 n.3. The Agency's motion is based on arguments that Oregon Health did not state a claim under the APA because Oregon Health's claims did not concern a final agency action, a prerequisite to stating an APA claim. *Cf. Statewide Bonding, Inc. v. Dep't of Homeland Sec.*, 980 F.3d 109, 114 (D.C. Cir. 2020) ("without final agency action, 'there is no doubt that appellant would lack a cause of action under the APA."). In other words, the Agency's motion was based on Oregon Health's pleadings, not "judicial review of administrative agency actions." Local R. Civ. 7(n)(1). The Agency does not need to produce an administrative record to make its motion to dismiss because an "administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss." *Janay v. Blinken*, Civ. A. No. 23-3737 (RDM), 2024 U.S. Dist. LEXIS 124714, at *7 (D.D.C. Jul. 16, 2024); *see also, RAI Care Ctrs. of Md. I, LLC v. OPM*, 459 F. Supp. 3d 124, 134 (D.D.C. 2020) (relieving the agency of its obligation to produce an administrative record in conjunction with its motion to dismiss because "the Court did not require an administrative record to resolve this motion.").

## II. The Agency Has Not Taken Any Actions Ripe for Judicial Review.

Oregon Health has not stated a claim that is ripe for review. The ripeness doctrine requires a reviewing court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Oregon Health argues that even if allowing the audit to proceed was not a final agency action the Agency's decision is still ripe for review. Opp'n at 20-21. This argument misstates the law because a final agency action is a prerequisite to establish that an APA claim is ripe for review.

*Holistic Candlers*, 664 F.3d at 943 n.4 ("our conclusion that the warning letters do not constitute final agency action makes it unnecessary for us to consider the remainder of the ripeness inquiry); *Pub. Citizen v. Off. of U.S. Trade Representative*, 970 F.2d 916, 921 (D.C. Cir. 1992) ("in the context of APA review that criterion of ripeness also requires final agency action"). For this reason, the Court could determine that Oregon Health's claims are not ripe solely by concluding that the Agency's decision to permit the audit is not a final agency action.

The two D.C. Circuit cases that Oregon Health relies on to support their argument that a non-final agency action can be ripe for review do not support their position, Opp'n at 20, because in both cases, the Court had determined that the challenged action was ripe for review in part because it was a final agency action. *See, Unity08 v. Fed. Election Comm'n*, 596 F.3d 861, 865 (D.C. Cir. 2010); *Cont'l Air Lines v. CAB*, 522 F.2d 107, 125 (D.C. Cir. 1975) ("[T]here is every indication that the Board considers its position on seating configuration to be final. That position was developed in formal, adjudicatory proceedings that consumed more than two years' time."). Further, neither opinion included language stating that a non-final action could still be ripe for review. *Id.* A non-final agency action is not fit for review and thus, the lack of a final agency action, standing alone, is reason to find that Oregon Health's claim is not ripe for review. *Pub. Citizen*, 970 F.2d at 921.

Oregon Health argues that without immediate judicial intervention they face a "Hobson's choice" between removal from the 340B Program and disclosing confidential information, but this argument is misguided. Opp'n at 23. But to date, the Agency has stated only that it would "reserve the right" to remove Oregon Health from the Program—removal is not inevitable. Letter from Britton (Nov. 12, 2024) (ECF No. 16-5). A claim that "rests upon contingent future events that may not occur, it is unripe." *Ameren Servs. Co. v. FERC*, 893 F.3d 786, 792 (D.C. Cir. 2018).

Cooperation with the audit will not cause Oregon Health a level of hardship that would justify finding ripeness. As explained above (*supra* § I), the 340B guidance includes safeguards for Oregon Health's proprietary information and patient information that the auditor must follow. 61 Fed. Reg. 65,409. Johnson & Johnson must also continue to sell Oregon Health drugs at the 340B rate while the audit is ongoing. 61 Fed. Reg. 65,410. The only hardship that Oregon Health arguably faces if they cooperate with the audit is the work that will be required to gather and submit the materials to the auditor and, if necessary, prepare a response to the audit report. *Id.* This is not sufficient to satisfy the hardship prong of the ripeness test because "the burden of participating in future proceedings does not 'constitute sufficient hardship for the purposes of ripeness.'" *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1205 (D.C. Cir. 1998). As the D.C. Circuit explained, "the litigant's interest in not being forced to defend itself in an allegedly unauthorized proceeding . . . is far less weighty than the court's interest in conserving its judicial resources and discouraging the flouting of administrative procedures." *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 742 (D.C. Cir. 1987). Accordingly, Oregon Health's claims are not ripe for review.

## III.    The Agency's Process Has Been Consistent with the 340B Program Guidance.

To the extent that the Court is inclined to consider Oregon Health's arguments that the Agency failed to follow proper procedure in allowing the audit to proceed, the exhibits that Oregon Health introduced into the record demonstrate that the Agency acted in a manner consistent with the published 340B Program Guidance. Oregon Health's claim that they did not receive written notice from Johnson & Johnson of potential violations more than thirty days before Johnson & Johnson filed the audit workplan with the Agency is contradicted by the correspondence that Oregon Health submitted in support of its pleadings. Opp'n at 25. Johnson & Johnson first contacted Oregon Health on April 22, 2024, stating that they wanted to "discuss and ask questions regarding [Oregon Health's] 340B Utilization." Email of Apr. 22, 2024 (ECF No. 1-1 at 1).

Oregon Health and Johnson & Johnson had scheduled a videoconference for May 3, 2024, but two days before the scheduled meeting, Oregon Health canceled the meeting because one of Oregon Health's attendees was not available at the scheduled time.  Email of May 1, 2024 (ECF No. 1-1 at 2).  Within the following two weeks, Johnson & Johnson emailed Oregon Health twice to reschedule the meeting.  Emails of May 8, 2024, May 15, 2024 (ECF No. 1-1 at 3).  The follow-up email that Johnson & Johnson sent on May 15, 2024, stated that Johnson & Johnson sought to have "a good faith discussion on the growth of your entity's 340B utilization."  Email of May 15, 2024 (ECF No. 1-1 at 3).  The following day, more than two weeks after Oregon Health canceled the meeting with Johnson & Johnson and after Oregon Health ignored two of Johnson & Johnson's requests to reschedule, Oregon Health sent Johnson & Johnson a letter generally outlining Oregon Health's preferred procedures for good faith negotiations with drug manufacturers.  See Letter from Ness (ECF No. 1-1 at 5-6).

If Johnson & Johnson's April 22 email requesting time to discuss Oregon Health's "340B utilization" did not put Oregon Health on notice that Johnson & Johnson potentially had concerns with Oregon Health's compliance with 340B Program requirements then the May 15 email seeking specifically to discuss "the growth of your entity's 340B utilization" should have because "significant changes in quantities of specific drugs ordered by a covered entity . . . may be a basis for establishing reasonable cause."  61 Fed. Reg. 65,406.  Thus, Oregon Health's claim that Johnson & Johnson did not provide written notification of potential violations is inaccurate.  Opp'n at 27.

Because Johnson & Johnson was unable to resolve the matter through more than thirty days of attempting to engage in good faith negotiation, as permitted by the guidance, Johnson & Johnson elected to file an audit workplan with the Agency.  61 Fed. Reg. 65,410. The Agency then

determined that Johnson & Johnson's audit workplan demonstrated reasonable cause to believe that Oregon Health was diverting 340B drugs to 340B ineligible patients or causing duplicative discounts.  Letter from Britton (Jul. 12, 2024) (ECF No. 1-3).  As a manufacturer that participates in the 340B program, Johnson & Johnson has a statutory right to audit covered entities that it reasonably suspects are misusing the 340B Program. 42 U.S.C. § 256b(a)(5)(C).  As a covered entity benefitting from the program, Oregon Health is obligated to cooperate with an audit supported by reasonable cause.  *Id.*; 61 Fed. Reg. 65,409 (explaining the statute "provides that a covered entity shall permit the manufacturer of a covered outpatient drug to audit the records of the entity that pertain to the entity's compliance with [the Program].") Thus, complying with Johnson & Johnson's requests for information are incidental to Oregon Health's continued ability to benefit from the 340B program.

## CONCLUSION

For these reasons, and the reasons stated in Defendants' underlying motion to dismiss, the Court should dismiss Plaintiff's claim.

Dated: January 14, 2025
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: */s/ John J. Bardo*
    JOHN J. BARDO, D.C. Bar #1655534
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 870-6770

*Attorneys for the United States of America*