UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OREGON HEALTH & SCIENCE UNIVERSITY,<br><br>  Plaintiff,<br><br>  v.<br><br>THOMAS J. ENGELS, Administrator, Health Resources and Services Administration, et al.,<br><br>  Defendants. | Civil Action No. 24-2184 (RC) |
| MAINEGENERAL MEDICAL CENTER,<br><br>  Plaintiff,<br><br>  v.<br><br>THOMAS J. ENGELS, Administrator, Health Resources and Services Administration, et al.,<br><br>  Defendants. | Civil Action No. 24-2187 (RC) |
| UNIVERSITY OF ROCHESTER,<br><br>  Plaintiff,<br><br>  v.<br><br>THOMAS J. ENGELS, Administrator, Health Resources and Services Administration, et al.,<br><br>  Defendants. | Civil Action No. 24-2268 (RC) |

| | |
|---|---|
| CHILDREN'S NATIVE MEDICAL CENTER,<br><br>        Plaintiff,<br><br>   v.<br><br>THOMAS J. ENGELS, Administrator, Health Resources and Services Administration, et al.,<br><br>        Defendants. | Civil Action No. 24-2563 (RC) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR STAY OR INJUNCTION PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Background ....................................................................................................................... 1

Legal Standards ................................................................................................................. 3

Argument ........................................................................................................................... 5

      I.     Plaintiffs are Unlikely to Succeed on the Merits. .................................................. 5

      II.    Plaintiffs Fail to Meet Their Burden to Establish Irreparable Harm To Warrant A Stay ...................................................................................................................... 11

      III.   The Balance of Interests Strongly Favor Denial of Plaintiff's Motion to Stay. .... 16

Conclusion ....................................................................................................................... 17

Defendants, the Secretary of Health and Human Services and the Administrator of the Health Resources and Services Administration (the "Agency") respectfully submit this memorandum in opposition to Plaintiffs' motion for a stay pending appeal (ECF No. 34-1, "Pl. Mot.").

## INTRODUCTION

Plaintiffs are various entities that purchase Johnson & Johnson-manufactured pharmaceuticals as covered entities under the 340B Drug Discount Program. Plaintiffs sued asking the Court to vacate the Agency's decision not to interfere with Johnson & Johnson's efforts to conduct a manufacturer audit of Plaintiffs' participation in the program. Upon the Agency's motion, the Court dismissed Plaintiffs claims finding the Agency's decision was not a final agency action reviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. Plaintiffs timely noticed an appeal and now seek an injunction staying any action on the audit pending an appeal. Because Plaintiffs have not satisfied any of the four factors required to demonstrate that they are entitled to a stay pending appeal, the Court should deny their motion.

## BACKGROUND

Plaintiffs are hospitals that are eligible to purchase drugs under the 340B drug discount program as covered entities. *See generally* Compl.[1] The program allows covered entities like Plaintiffs to purchase "covered outpatient drugs" at a discount from manufacturers who have agreed to participate in the Program. 42 U.S.C. § 256b(a)(1). To remain eligible for the program covered entities are subject to certain obligations. Specifically, covered entities are prohibited from taking discounts under Medicaid and the 340B program for the same unit of drug, *id.*

---

[1] Defendants refer to filings in *Oregon Health & Science University v. Engles*, Civ. A. No. 24-2184 (RC) (D.D.C.), because it is the lead case. The allegations in all cases are nearly identical.

§ 256b(a)(5)(A), or reselling or otherwise transferring 340B drugs to persons who are not their patients. *Id.* § 256b(a)(5)(B). Additionally, covered entities are required to permit the Secretary and manufacturers to audit the entity's records that pertain to compliance with the prohibitions on duplicate discounts and diversion. 42 U.S.C. § 256b(a)(5)(C). The Agency's Office of Pharmacy Affairs administers the 340B Program under authority delegated by the Secretary of the Department of Health and Human Services. The Agency is authorized under the statute to audit covered entities. 42 U.S.C. § 256b(a)(5)(C). So too are participating drug manufacturers. *Id.* A manufacturer seeking to conduct an audit must file an audit workplan with the Agency. 61 Fed. Reg. 65,406 (Dec. 12, 1996). The Agency reviews the manufacturer's work plan for "reasonable purpose and scope" and if after the review, the Agency determines that the manufacturer has established reasonable cause that the covered entity is violating the prohibition on duplication or diversion, the Agency "will not intervene" in the manufacturer's audit of the covered entity. *Id.* at 65,410.

After the audit is complete, the auditors must prepare an audit report, which is provided to the Agency and the covered entity. *Id.* The covered entity has thirty days to provide its response to the report's findings and recommendations, including any planned actions to address the findings. *Id.* After an audit and review of the findings (if any), the Agency may take enforcement action against the covered entity, which can include ordering the covered entity to reimburse the manufacturer for the amount of price reduction that the covered entity received in connection with the diversion or duplicate discount, 42 U.S.C. § 256b(a)(5)(D), (d)(2)(B)(v)(I), or a covered entity's removal from the 340(B) Program. *Id.* § 256b(d)(2)(B)(v)(II). Any enforcement action would depend on the audit's findings, the covered entity's response, as well as the agency's final

determination on the matter, which could include adjudication of the dispute through a 340B Administrative Dispute Resolution process initiated by the manufacturer. 42 U.S.C. § 256(d)(3).

In June 2024, Johnson & Johnson contacted each of the Plaintiffs attempting to arrange a "good faith discussion" about Plaintiffs' "340B utilization." Compl. ¶¶ 52–53. Because Plaintiffs were not willing to engage with Johnson & Johnson, the manufacturer submitted an audit workplan for each of the Plaintiffs to the Agency and the Agency allowed Johnson & Johnson to proceed with the audits. Compl. ¶¶ 59-60. Johnson & Johnson retained Deloitte & Touche, LLP ("Deloitte") to conduct the audits and, after learning of the audits from Deloitte, Plaintiffs contacted the Agency and asked the Agency to reconsider its decision to allow the audits to proceed. *Id.* ¶ 70. The Agency declined the requests and Plaintiffs sued claiming that the Agency's decision not to interfere with the audits was arbitrary, capricious, and unlawful. Accordingly, Plaintiffs sought relief under Section 706(2)(A) of the APA, asking the Court vacate and set aside the Agency's decision. Compl. ¶¶ 116, 120.

The Agency moved to dismiss Plaintiffs' claims arguing that they were not ripe for review, and, even if they were ripe, the claims were not cognizable under the APA because the Agency's decision to allow the audits was not a final agency action. Mot. to Dismiss (ECF No. 18). On June 17, 2025, the Court granted Defendants' motions concluding that no final agency action occurred. Mem. Op. (ECF No. 29) at 3. Plaintiffs timely filed notices of appeal (ECF No. 32) and now seek a stay pending their appeal.

## LEGAL STANDARDS

An injunction pending appeal is an "extraordinary remedy." *Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 324 (D.D.C. 2018); *see also John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (per curiam). Because it is "an intrusion into the ordinary process[es] of administration and judicial review," it is "not a matter of right, even if irreparable injury might

- 3 -

otherwise result to the appellant." *Nat'l Ass'n of Mfrs. v. Nat'l Lab. Rels. Bd.*, Civ. A. No. 11-1629 (ABJ), 2012 WL 1929889, at *1 (D.D.C. Mar. 7, 2012) (*quoting Nken v. Holder*, 556 U.S. 418, 427 (2009)); *see also MediNatura, Inc. v. FDA*, Civ. A. No. 20-2066 (RDM), 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021). Rather, the moving party bears the burden of showing that this remedy is warranted. *See McCammon v. United States*, 588 F. Supp. 2d 43, 47 (D.D.C. 2008).

The standards for evaluating a motion for an injunction pending appeal are "substantially the same as those for issuing a preliminary injunction," meaning that the movant generally "must establish" that (1) "they are likely to succeed on the merits," (2) "they are likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in their favor," and (4) "an injunction is in the public interest." *Alcresta Therapeutics*, 318 F. Supp. 3d at 324 (cleaned up). These are "stringent requirements." *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 877 F.3d 1066, 1066 (D.C. Cir. 2017) (per curiam). The first two "prongs" typically are the "most critical." *See Citizens for Resp. & Ethics in Wash. ("CREW") v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) (internal quotation marks omitted). The last two prongs, however, are by no means an afterthought. *See, e.g., Fed. Maritime Comm'n v. City of Los Angeles*, 607 F. Supp. 2d 192, 203 (D.D.C. 2009) (noting how, in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court reversed a preliminary injunction despite "assuming irreparable harm" and not "addressing the underlying merits").

"[I]n at least some circumstances an injunction pending appeal may be appropriate even if the court that just denied injunctive relief believes its analysis in denying that relief is correct such that the movant cannot show a likelihood of success." *Republican Nat'l Comm. v. Pelosi*, Civ. A. No. 22-659 (TJK), 2022 WL 1604670, at *3 (D.D.C. May 20, 2022) (cleaned up). Accordingly, "in rare cases, the threat of irreparable harm may be so grave and the balance of equities may

favor" the movant "so decisively that an injunction pending appeal . . . may be proper," even without a likelihood of success on the merits, so long as the movant establishes a "serious legal question" on the merits and shows that "the other three factors tip sharply" in its favor. *See MediNatura*, 2021 WL 1025835, at *6 (cleaned up); *see also Cigar Ass'n of Am. v. U.S. FDA*, 317 F. Supp. 3d 555, 560–61 & n.4 (D.D.C. 2018). That said, where the "relief sought is an injunction on the coordinate branches of government . . . it is even more important that the three remaining factors outweigh the lack of likelihood of success on the merits." Order at 4–5, *Trump v. Thompson*, Civ. A. No. 21-2769 (TSC) (D.D.C. Nov. 10, 2021), ECF No. 43. After all, "courts must take care not to unnecessarily 'halt the functions of a coordinate branch.'" *Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021) (*quoting Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975)).

## ARGUMENT

### I. Plaintiffs are Unlikely to Succeed on the Merits.

Plaintiffs are unlikely to succeed in convincing the D.C. Circuit that this Court was incorrect when it determined that the Agency's decision not to interfere with Johnson & Johnson's audits was not a final agency action reviewable under the APA. *CREW*, 904 F.3d at 1019(failure to show a "substantial" likelihood of success on the merits is "an arguably fatal flaw" for a stay application).

Plaintiffs rehash the same arguments that the Court had already considered and rejected in its decision granting the Agency's motion to dismiss. Pl. Mot. at 15. In any event, Plaintiffs claims will fail on the merits because the Agency's determination that the audits can proceed is not a "final agency action" for purposes of the APA. The APA's definition of "final agency action" expressly carves out "preliminary, procedural, or intermediate agency action." 5 U.S.C. § 704. Judicial review may be obtained under the APA only if the agency action is considered "final."

*Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003). To be final, agency action must be definitive, with a direct and immediate effect on the day-to-day business of the challenging party. *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003). "An agency action is 'final for the purposes of [the APA]' only after a plaintiff 'has exhausted all administrative remedies expressly prescribed by statute or agency rule.'" *Holistic Candlers & Consumers Ass'n v. FDA*, 770 F. Supp. 2d 156, 163 (D.D.C. 2011), *aff'd*, 664 F.3d 940, 945 (D.C. Cir. 2012) (quoting *Darby v. Cisneros*, 509 U.S. 137, 146 (1993)).

In *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), the Supreme Court established a two-part test for determining whether an agency action qualifies as final to be subject to judicial review: "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Both *Bennett* prongs must be met to make agency action final. *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018). Because the Agency's decision to allow the audits to proceed is only "interlocutory" in nature and did not consummate the Agency's decision-making process, Plaintiffs' challenge fails the first prong of the *Bennett* test. And even if it did not, it nevertheless fails on the second prong because the decision to allow the audit to proceed does not itself have legal consequences for Plaintiff.

Here, deciding that an audit can proceed is not final agency action because it is only a "threshold determination that further inquiry is warranted." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241 (1980). Indeed, the Agency has simply allowed Johnson & Johnson to exercise a statutory right to audit Plaintiffs' compliance with the diversion and duplicate discount prohibitions in the 340B Program. Letter from Britton to Vazquez (ECF No. 1-2 at 60). The audit

is at Johnson & Johnson's expense. *Id*. Additional steps are required before the Agency can take any action limiting Plaintiffs' participation in the 340B Program or, indeed, any other action based on the audit. Specifically, Johnson & Johnson must prepare a report and send it to Plaintiffs, and Plaintiffs must provide a response within thirty days. 61 Fed. Reg. 65,410. If Plaintiffs disagree with the findings, then Plaintiffs must submit its rationale for the disagreement to Johnson & Johnson. *Id.* Johnson & Johnson could then elect to use the audit findings to bring a proceeding against Plaintiffs before the Agency's Office of Pharmacy Affairs. *See* 42 U.S.C. § 256b(d)(3). Only after the Agency determined that enforcement action is warranted at the conclusion of that process and decides to take enforcement action would there be legal consequences for Plaintiffs, and the agency's decision at that time would be subject to judicial review. *See id.* § 256b(d)(3)(C). At the present stage, all these potential outcomes are hypothetical. Because Plaintiffs have prevented Johnson & Johnson from exercising its statutory right to conduct an audit, 42 U.S.C. § 256b(a)(5)(C), Johnson & Johnson has not yet conducted the audit or made any findings therefrom to which Plaintiff can respond. The Agency cannot take any adverse action against Plaintiff based on a report that does not yet exist.

  Plaintiffs dismiss the utility of the processes that are available to them before the Agency take any enforcement action against them and instead argue that the Agency allowing the audit to proceed is, itself, a final agency action. Pl. Mot. at 17. But their argument is incorrect as a matter of law. Deciding that an audit can proceed is not a final agency action because it is not "the culmination of [the Agency's] consideration of an issue." *Soundboard Ass'n*, 888 F.3d at 1267; *Automatic Sprinkler*, 324 F.3d at 734 (series of agency actions non-final, as "the agency has not yet done that which the statutory scheme requires for its conduct to constitute final agency action"—namely, reach a final decision after an administrative proceeding); *Winter v. Cal. Med.*

*Rev., Inc.*, 900 F.2d 1322, 1325-26 (9th Cir. 1990) (since agency's conclusions could change with additional information, "appellant's claim that the investigation itself represented final agency action lacks merit . . . . This court must give the agency an opportunity to formulate a final position."). Indeed, in similar circumstances, courts have found that initiating an audit or investigation-like proceeding does not satisfy the first prong of the *Bennett* final agency action test. *See Harper v. Werfel*, 118 F.4th 100, 116 (1st Cir. 2024) (holding that the IRS's summons of the plaintiff's records is not a final agency action, because the summons is "far upstream of any potential tax enforcement actions."); *Automatic Sprinkler*, 324 F.3d at 734 (agency's investigatory actions are not final reviewable actions even if there are "practical consequences" for the regulated party); *Mass. Mfg. Extension P'ship v. Locke*, 723 F. Supp. 2d 27, 38 (D.D.C. 2010) ("The plaintiffs are not entitled to any decision on the merits of those audits, however, since the audits have not yet culminated in any final agency action"). Because Johnson & Johnson is simply exercising a statutory right to conduct an audit, 42 U.S.C. § 256b(a)(5)(C), additional proceedings, including the audit, Plaintiffs' response to the audit and any alternative dispute resolution proceedings must occur before the Agency can take any action against Plaintiffs. 61 Fed. Reg. 65,406. Therefore, the Agency's decision to permit the audit is interlocutory and thus not a reviewable final agency action.

Plaintiffs cannot demonstrate that the Agency's decision to allow the audits was one in which "rights or obligations have been determined," as is required to satisfy the second *Bennett* prong. In evaluating the second *Bennett* prong, courts look to whether the action has "direct and appreciable legal consequences," *Army Corps. of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 598 (2016) (cleaned up), including by imposing an obligation, denying a right, or fixing some legal relationship. *Role Models Am., Inc. v. White*, 317 F.3d 327, 331-32 (D.C. Cir. 2003). Plaintiffs'

obligation to cooperate with an audit does not satisfy this standard because, even if non-compliance with Johnson & Johnson's audit request carries risk for Plaintiff, "practical consequences, . . . should the agency actually decide to pursue enforcement, are insufficient to bring an agency's conduct under a Court's purview." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004). At base, the obligation to defend oneself in an enforcement proceeding audit does not become a final agency action simply because cooperating with it will require Plaintiffs to gather documents and respond to other requests from the auditor. *Automatic Sprinkler*, 324 F.3d at 729; *contra* Pl. Mot at 24-25.

Despite failing to mention it in their merits briefing, Plaintiffs analogize the Agency's decision allowing Johnson & Johnson to conduct the audits to *Sackett v. EPA*, 566 U.S. 120 (2012). Pl. Mot. at 21. In *Sackett,* 566 U.S. at 122, plaintiffs challenged a "compliance order" from the an agency that they bring their property into compliance with the Clean Water Act by following a work plan. The Supreme Court held that the compliance order was a final agency action because the order required the plaintiffs to "'restore their property according to an Agency-approved Restoration Work Plan" or else face liability. *Id.* at 126. Here, unlike in *Sackett*, the Agency has not ordered the Plaintiffs to change anything about their operations to come into compliance with the 340B statute. In *Sackett*, 566 U.S. at 122, the agency had already concluded that the plaintiffs were in violation of the statute and ordered them to come into compliance or face enforcement action. In contrast to the circumstances in this case, the Agency has not reached any conclusions about whether Plaintiffs are complying with the 340B program prohibitions on duplicate discounts and diversion. The Agency cannot make any conclusions until it has received Johnson & Johnson's audit report. 61 Fed. Reg. 65,410.

Although the Agency's decision required Plaintiffs to cooperate with Johnson & Johnson, mere compliance with the decision lacks any direct legal consequences because "during the audit process, the manufacturer must continue to sell covered outpatient drugs at the section 340B ceiling price to the covered entity being audited, and the covered entity must continue to comply with the requirements of section 340B(a)(5)." 61 Fed. Reg. 65,410.  In other words, Johnson & Johnson must continue to sell to Plaintiffs the covered outpatient drugs at the discounted rate even as the audit is ongoing.  *Id*.  Plaintiffs will only face legal consequences such as repayment to Johnson & Johnson for the value of the diversion or duplicate discount, if the Agency makes certain determinations subsequent to the audit (i.e., if, after review of the audit findings, the Agency determines that "corrective" or "enforcement action" is warranted, or if a manufacturer initiates a claim through the administrative dispute resolution process and the Agency determines that enforcement is warranted at the conclusion of that process).  *See* 42 U.S.C. § 256b(a)(5)(D); *id.* § 256b(d)(2)(B)(v)(I), (II); *see also* 42 C.F.R. § 10.23(c), (d).  Even though the Agency's decision allowing Johnson & Johnson to conduct the audits was "definitive on the question whether" there was "reason to believe that" Plaintiffs are misusing the program, the action is not "definitive" based on the ability to challenge that averment in further proceedings.  *Standard Oil*, 449 U.S. at 241.  If the Agency determines, based on the audit findings, that Plaintiffs are taking duplicative discounts or diverting 340B drugs to non-340B patients and proposes enforcement or other remedial action that forces Plaintiffs to come into compliance with the program, then at that point, the Agency's determination is a final agency action subject to judicial review under the APA. To be clear, that determination has not yet occurred.

Moreover, even in its correspondence with Plaintiffs since the Court's dismissal order, the Agency has not stated that Plaintiffs' refusal to cooperate with the audit will inevitably lead to

enforcement action. *See, e.g.*, Letter from Britton (ECF No. 32-2). The Agency continues to advise Plaintiffs that it "reserves the right" to remove Plaintiffs from the 340B Program if Plaintiffs fail to comply with their statutory obligation to permit the audit. *Id.* In an August 6, 2025, email, the Agency advised Plaintiffs that their continued delay in cooperating with the audit "could result in the immediate removal" from the 340B program, not inevitable removal. Email from Britton (ECF No. 32-2). To this day, even though Plaintiffs have resisted cooperating with the audits for fourteen months and more than two months after the Court's ruling the audits are not judicially reviewable, the Agency has not removed Plaintiffs from the program. A warning letter that a regulated party's actions may lead to enforcement action but would not "inevitably" do so does not represent the consummation of an agency's decision-making process. *Holistic Candlers*, 664 F.3d at 944; *see also ForUsAll, Inc. v. Dep't of Lab.*, 691 F. Supp. 3d 14, 27 (D.D.C. 2023) ("the statement that the Department will 'take appropriate action to protect the interests' also does not indicate that any enforcement action is imminent or inevitable."); *Nat'l Wildlife Fed'n v. EPA*, 945 F. Supp. 2d 39, 45 (D.D.C. 2013) ("The fact that an agency will apply a regulation if certain events take place in the future does not satisfy the final agency action requirement for purposes of an as-applied challenge.").

## II.  Plaintiffs Fail to Meet Their Burden to Establish Irreparable Harm To Warrant A Stay.

Plaintiffs must demonstrate that they will suffer irreparable harm in the absence of the requested relief. *See Chaplaincy of Full Gospel Churches*, 454 F. 3d at 297. "[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (citation modified; quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d

669, 674 (D.C. Cir. 1985)); *see also Save Jobs USA v. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112-13 (D.D.C. 2015). Irrespective of a party's showing as to the other three factors necessary to obtain preliminary equitable relief, "'[a] . . . failure to show any irreparable harm' constitutes grounds for denying the motion." *Sterling Com. Credit-Mich., LLC v. Phoenix Indus. I, LLC*, 762 F. Supp. 2d 8, 13 (D.D.C. 2011) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297); *see also Kalshiex LLC v. CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024) (denying motion for stay pending appeal even though "the question on the merits is close and difficult" because the movant did not establish irreparable harm); *English v. Trump*, 279 F. Supp. 3d 307, 336 (D.D.C. 2018) ("[Plaintiff's] inability to demonstrate that she is likely to suffer irreparable harm, regardless of her likelihood of success on the merits, is also a sufficient basis to deny her motion [for preliminary injunctive relief]."). A "stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427; *see also Coal. for Humane Immigrant Rts. v. Dep't of Homeland Sec.*, Civ. A. No. 25-943 (TNM), 2025 U.S. Dist. LEXIS 112055, at *17 (D.D.C. Jun. 12, 2025) ("Rule 62(d) suggests that the demand is higher still when a party is seeking a stay pending the appeal of a denial of a preliminary injunction.").

Purely economic loss, even when large sums of money are involved, typically will not constitute irreparable injury. *See Wis. Gas*, 758 F.2d at 674 (noting it is "well settled that economic loss does not in and of itself constitute irreparable harm"); *Emily's List v. FEC*, 362 F. Supp. 2d 43, 52 (D.D.C. 2005). Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business. *See Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C. Cir. 1977). The movant may not rely on "bare allegations" that the business will not survive absent a stay. *Wis. Gas Co.*, 758 F.2 at 674. Instead,

the movant must provide some evidence of irreparable harm: "the movant [must] substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future." *Id.* at 674 (internal quotation marks and citation omitted). This is because issuing an injunction "based only on a possibility of irreparable harm is inconsistent with [the court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. As these authorities make clear, to meet the standard for irreparable harm, Plaintiffs here must present sufficient evidence that the purported injury is certain, great, actual, imminent, and beyond remediation.

The Court should reject Plaintiffs' contentions that they face "immediate, irreversible harm" justifying a stay of the Court's dismissal order. Plaintiffs largely base their argument for irreparable harm on the recent Agency communications to Plaintiffs, warning them that failure to comply with the audits risks their removal from the 340B program. Pl. Mot. at 22–23; *see, e.g.*, OHSU Decl., Ex. C. But Plaintiffs' claim that they will be removed from the 340B Program remains speculative today, as it was at the initiation of this litigation. The audits have not begun and Johnson & Johnson must continue to sell Plaintiffs the covered outpatient drugs at the 340B discounted rate. 61 Fed. Reg. at 65,410. Importantly, as this Court has already concluded, "the risk of penalty if Plaintiffs choose not to comply with the audits again comes not from [the Agency's] audit review decisions but from Plaintiffs' 340B Program eligibility requirements under 42 U.S.C. § 265b(a)(5)(C)." Mem. Op. (ECF No. 29) at 20.

Courts "do not find irreparable harm based on an economic injury the plaintiff could avoid." *Campbell v. Schmidt*, Civ. A. No. 20-1785 (CRC), 2020 U.S. Dist. LEXIS 204893, at *35

(D.D.C. Nov. 3, 2020*); see also Morgan v. White*, 964 F.3d 649, 651 (7th Cir. 2020) ("One important question, when a plaintiff seeks emergency relief, is whether the plaintiff has brought the emergency on himself."). Plaintiffs can avoid any harm that would flow from being removed from the 340B Program for failure to comply with the audit process simply by cooperating with Johnson & Johnson's audit requests. Plaintiffs claim that they would suffer harm from needing to turn over confidential patient health information, proprietary business data, confidential contract information, and materials protected by attorney-client privilege and work product doctrine. Pl. Mot. at 28. This is incorrect. Deloitte, as Johnson & Johnson's retained auditor, did not ask Plaintiffs to turn over attorney-client communications and attorney work product, *see* Data Request List (ECF No. 1-3), and the Agency's audit guidance could not be construed to require a covered entity to turn over such information. 61 Fed. Reg. 65,406. Deloitte has provided sufficient safeguards for the other types of confidential information that Plaintiffs claim they will face harm from disclosing. Specifically, Deloitte advised Plaintiffs that when providing data, they should limit protected health information and personally identifiable information to information specifically requested. Deloitte Data Request List (ECF No. 18-2 at 23). Deloitte also permitted Plaintiffs to redact proprietary business information that is "not related to the prevention of diversion or duplicative discounts." *Id*. at 21-22. Additionally, Deloitte agreed to refrain from disclosing patient information or other proprietary information that Deloitte obtains through the audit to Johnson & Johnson. Deloitte Data Request List (ECF No. 18-2 at 23). Plaintiffs need not simply rely on Deloitte's promise to keep this information confidential because the 340B program guidance prohibits the auditor (i.e., Deloitte) from sharing this information with the manufacturer (i.e., Johnson & Johnson). 61 Fed. Reg. 65,409 ("Confidential patient information and/or proprietary information which auditors may access in the performance of an audit will not be

disclosed to the manufacturer."). In allowing the audit to proceed, the Agency was satisfied that the audit workplan had sufficient safeguards "to protect patient confidentiality and proprietary information." 61 Fed. Reg. 65,410. Plaintiffs therefore fail to carry their burden to show an irreparable injury that is immediate and "both certain and great; . . . actual and not theoretical." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.

Plaintiffs' declarants all engage the same refrain regarding the economic and reputational harms they may suffer if they are removed from the 340B program, and as discussed above, these assertions are insufficient to support a stay of the Court's Order. More importantly, Plaintiffs offer nothing concrete to show that any harm flows from simply acceding to the statutorily mandated audit process. A movant cannot show "certain[] impending" injury when the asserted injury is based on a "speculative chain of possibilities," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), or on "speculation about the decisions of independent actors," *id.* at 414. As the D.C. Circuit has cautioned: "Because of the generally contingent nature of predictions of future third-party action," a court should be "sparing in crediting claims of anticipated injury by market actors and other parties alike." *Arpaio v. Obama*, 797 F.3d 11, 23 (D.C. Cir. 2015).

In practice, the only harm that could come to Plaintiffs' cooperation with the audit would be Plaintiffs' additional work required to respond to the auditor's requests for information. *See* Pl. Mot. at 27-28. But mere losses of "money, time and energy," "however substantial," do not create irreparable harm. *Wis. Gas Co.*, 758 F.2d at 674 (quoting *Va. Petrol. Jobbers Asso. v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)); *cf. Standard Oil*, 449 U.S. at 244 ("The expense and disruption of defending oneself in protracted adjudicatory proceedings is not an irreparable harm."). Moreover, even if the Court were inclined to accept Plaintiff's arguments that the decision to allow the audit to proceed is unlawful, that would not be enough to show irreparable harm

because "irreparable harm requires something more than having to comply with or abide by an illegal agency decision pending the outcome of litigation over that decision." *Breen v. Mineta*, Civ. A. No. 05-0654, 2005 U.S. Dist. LEXIS 35416, at *7 (D.D.C. Sept. 30, 2005).

Plaintiffs' motion for a stay must therefore be denied.

### III.     The Balance of Interests Strongly Favor Denial of Plaintiff's Motion to Stay.

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party, and the public interest—merge when the government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015). Courts must "[give] particular regard [to] the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982). To determine the balance of interests, including the public interest here, the Court "weighs the harm" to Plaintiffs "if there is no injunction against the harm to" the government "if there is" an injunction. *Cf. Pursuing Am.'s Greatness*, 831 F.3d at 511. In this case, the balance of equities and the public interest tip strongly in favor of the Government, for "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011). As this Court has already found, the Agency's decision to allow Johnson & Johnson to proceed with the audit was consistent with the 340B statute and the Agency's published guidance. *See* Mem. Op. (ECF No. 29) at 19–21.

Granting Plaintiffs' motion would also alter the status quo, which the Court should not lightly do. Injunctions that "'would change the status quo' are disfavored as 'an even more extraordinary remedy' than the typical preliminary injunction, 'especially when directed at the United States Government.'" *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 93 (D.D.C. 2021) (quoting *Abdullah v. Bush*, 945 F. Supp. 2d 64, 67 (D.D.C. 2013), and *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005)). Injunctions that alter the status quo, on

balance, favor the non-movant. *See, e.g.*, *Davis v. Billington*, 76 F. Supp. 3d 59, 68 (D.D.C. 2014); *Elite Entm't, Inc. v. Reshammiya*, Civ. A. No. 08-0641, 2008 WL 9356287, at *4 (D.D.C. Apr. 18, 2008). Currently, Plaintiffs remain in the 340B Program, and as discussed above, Plaintiffs can avoid the prospect of being removed from the program by simply complying with the audit, during which time Johnson & Johnson will be required to continue to sell drugs to Plaintiff at the 340B discount rate. 61 Fed. Reg. 65,410. Because the stay that Plaintiffs seek will alter the status quo, the third and fourth factors weigh against granting Plaintiffs' motion.

## CONCLUSION

For these reasons, Plaintiffs' motion for a stay of the Court's June 17, 2025, Order should be denied.

Dated: September 2, 2025

Respectfully submitted,

ALICIA M. LONG
Attorney for the United States Acting under
Authority Conferred by 28 U.S.C. § 515

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By:     */s/ John J. Bardo*
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2539

TABITHA BARTHOLOMEW, D.C. Bar #1044448
Assistant United States Attorney

*Attorneys for the United States of America*